Matthew L. Shoger, KS No. 28151
Assistant Kansas Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
matt.shoger@ag.ks.gov
785-296-2215
Fax: (785) 291-3767
*Attorney for Defendants*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Baskin,** | ) |
| | ) Case. No. CV-21-01890-PHX-SPL (JFM) |
| **Plaintiff,** | ) |
| | ) **MEMORANDUM IN SUPPORT** |
| v. | ) **OF DEFENDANTS' MOTION** |
| | ) **TO DISMISS OR, IN THE** |
| **Thomas,** *et al.*, | ) **ALTERNATIVE, TO TRANSFER** |
| | ) |
| **Defendants.** | ) *(Pro Hac Vice)* |
| | ) |

In accordance with LRCiv 7.2(b), Defendants (FNU) Giaboian and (FNU) Diaz (the Kansas Department of Corrections Defendants), submit this memorandum, through Assistant Attorney General Matthew L. Shoger of the state of Kansas, in support of their motion under Fed. R. Civ. P. 12(b)(2), (b)(3), and (b)(6). The KDOC Defendants respectfully request that this motion be granted and the claims against the KDOC Defendants be severed and either dismissed or, in the alternative, transferred to the District of Kansas. The KDOC Defendants state the following in support.[1]

## QUESTIONS PRESENTED

I.  Does the Court have personal jurisdiction over the KDOC Defendants when their

---

[1] The notice requirement in LRCiv 12.1(c) would be futile in this case due to Baskin's inability to cure by amendment his failure to exhaust. Regardless, the District of Kansas has no such local rule, so upon transfer it would dismiss the case.

actions allegedly occurred in Kansas, they did not enter Arizona, and they did not target any actions at Arizona?

II. Is venue improper in Arizona as to the KDOC Defendants when the KDOC Defendants all reside in Kansas and their actions allegedly occurred in Kansas?

III. Does Baskin fail to state a claim for relief when his Complaint shows that he failed to exhaust his administrative remedies under the Prison Litigation Reform Act (PLRA)?

IV. If the Court lacks personal jurisdiction or proper venue, should the Court dismiss the claim rather than transfer it when the District of Kansas would dismiss it for failure to state a claim due to failure to exhaust administrative remedies?

## ARGUMENTS AND AUTHORITIES

### *Standard on Motion to Dismiss for Lack of Personal Jurisdiction*

For purposes of a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Will Co. v. Lee*, 47 F.4th 917, 921 (9th Cir. 2022). "Uncontroverted allegations in the complaint must be taken as true," and factual conflicts arising from conflicting evidence must be resolved in the plaintiff's favor. *Id.* In federal court, a party does not waive the defenses of lack of personal jurisdiction or improper venue by joining these defenses with other arguments or by presenting evidence on the merits of the case.[2] Accordingly, special limited appearances are not required.[3]

### *Standard on Motion to Dismiss for Improper Venue*

On a motion to dismiss for improper venue under Federal Rule of Civil Procedure

---

[2] *S.E.C. v. Wencke*, 783 F.2d 829, 832 n.3 (9th Cir. 1986); *Smith v. TFI Fam. Servs., Inc.*, No. 17-02235-JWB, 2019 WL 1556250, at *3 (D. Kan. Apr. 10, 2019).
[3] *Wencke*, 783 F.2d at 832 n.3; *TFI*, 2019 WL 1556250, at *3.

12(b)(3), "the standards . . . are generally the same as for deciding a motion to dismiss for lack of personal jurisdiction."[4] "Once a defendant challenges venue, the plaintiff bears the burden of establishing that venue is proper."[5] The court need not accept the pleadings as true and may consider facts outside the pleadings, but it must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff.[6]

### *Standard on Motion to Dismiss for Failure to State a Claim*

On a Rule 12(b)(6) motion to dismiss for failure to state a claim, although a court must accept as true all well-pleaded factual allegations in the complaint, *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009),[7] a complaint must also contain enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The court need not accept as true those allegations that state only legal conclusions. *Id.* Under this standard, a plaintiff's claim must cross the line from "conceivable to plausible," and "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the

---

[4] *Mohr v. Margolis, Ainsworth & Kinlaw Consulting, Inc.*, 434 F. Supp. 2d 1051, 1057-58 (D. Kan. 2006); *see also Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139 (9th Cir. 2004) ("The standard that we announce today [for 12(b)(3) motions] also comports with the approach we have taken with other Fed. R. Civ. P. 12(b) motions."), *abrogated on other grounds by Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 55 (2013) (holding that forum selection clauses should not be addressed through Rule 12(b)(3)).
[5] *Alpine 4 Holdings Inc. v. Finn Mgmt. GP LLC*, No. CV-21-01494-PHX-SPL, 2022 WL 1188073, at *5 (D. Ariz. Apr. 21, 2022) (citing *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979)).
[6] *Id.* (citing *Murphy*, 362 F.3d at 1137-38).
[7] *See also Mendoza v. Strickler*, 51 F.4th 346, 351 (9th Cir. 2022).

complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis omitted).[8]

Although courts have traditionally construed *pro se* pleadings in a liberal fashion, this "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996).[9] Similarly, courts do not assume the role of an advocate for the *pro se* litigant by constructing arguments or searching the record for potentially viable theories. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).[10] A *pro se* litigant is expected to construct his or her own arguments or theories and adhere to the same rules of procedure that govern any other litigant. *Garrett*, 425 F.3d at 840-41.[11]

I. **The Court lacks personal jurisdiction because the KDOC Defendants' actions allegedly occurred in Kansas, they did not enter Arizona, and they did not target any actions at Arizona.**

According to the U.S. Supreme Court, federal courts recognize:

two types of personal jurisdiction: "general" (sometimes called "all-

---

[8] *See also Somers v. Apple, Inc.*, 729 F.3d 953, 966 (9th Cir. 2013).
[9] *See also Gray v. Saks 5th Ave.*, No. CV-20-01987-PHX-JJT, 2022 WL 860655, at *1 (D. Ariz. Mar. 23, 2022) ("In civil rights cases where the plaintiff appears pro se, the court must "construe the pleadings liberally. . . . Nevertheless, even pro se litigants bear the burden of establishing a legal basis for the relief sought, and a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled.").
[10] *See also Ali v. Scotia Grp. Mgmt. LLC*, No. CV-18-00124-TUC-JGZ, 2018 WL 3729742, at *3 (D. Ariz. Aug. 6, 2018) ("the Court is not to serve as an advocate of a pro se litigant in attempting to decipher a complaint") (citation omitted); *Wiggins v. Shinn*, No. CV 19-00016 PHX JJT (CDB), 2020 WL 8678096, at *17 (D. Ariz. Dec. 17, 2020) ("While the courts liberally construe pro se pleadings as a matter of course, judges are not also required to construct a party's legal arguments for him.").
[11] *See also Wiggins*, 2020 WL 8678096, at *17; *D'Agostino v. Ariz. Dep't of Econ. Sec.*, No. CV-21-01292-PHX-SPL, 2022 WL 3682003, at *3 (D. Ariz. Aug. 25, 2022) ("pro se litigants must follow the same rules of procedure that govern other litigants").

purpose") jurisdiction and "specific" (sometimes called "case-linked") jurisdiction. For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . . Specific jurisdiction is very different. In order for a state court to exercise specific jurisdiction, the suit must arise out of or relate to the defendant's contacts with the *forum*.[12]

Specific personal jurisdiction in federal court must conform with the state's long-arm statute and the Due Process Clause of the United States Constitution.[13] Arizona's long-arm statute permits the exercise of specific personal jurisdiction over non-resident defendants "to the full extent allowable under the United States Constitution."[14] So for limitations we look only to the Due Process Clause of the U.S. Constitution, which "requires that non-resident defendants have sufficient 'minimum contacts' with the forum state such that exercising jurisdiction would not offend 'traditional notions of fair play and substantial justice'"[15]

When evaluating specific personal jurisdiction, defendants must be decoupled, and each individual defendant must separately meet the minimum-contacts test.[16] An employer's contacts with the forum state are not imputed to each of the employer's employees, but rather each individual defendant must separately meet the minimum-contacts test.[17] For cases sounding in tort – such as § 1983 cases[18] – each defendant has minimum contacts with the forum state "if: (1) the defendant purposefully directs

---

[12] *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017) (emphasis in original) (citation omitted).
[13] *Burri Law PA v. Skurla*, 35 F.4th 1207, 1212 (9th Cir. 2022).
[14] *Id.* (citing Ariz. R. Civ. P. 4.2(a)).
[15] *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).
[16] *Id.* at 1213.
[17] *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1109 (9th Cir. 2020).
[18] *Pony v. Cnty. of L.A.*, 433 F.3d 1138, 1143 (9th Cir. 2006) (citing *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709 (1999)).

activities toward the forum state, (2) the plaintiff's claim arises out of or relates to those activities, and (3) an exercise of jurisdiction would be reasonable."[19] The plaintiff has the burden to establish the first two elements.[20] The third element is then presumed and the burden shifts back to the defendant to "present a compelling case that the exercise of jurisdiction would not be reasonable."[21]

Regarding the first element (purposeful direction), a defendant purposefully directs activities toward a forum state if the defendant either commits an intentional tort inside the forum state or "(1) commits an intentional act [outside of the forum state], (2) expressly aimed at the forum state, that (3) causes harm the defendant knew was likely to be suffered in the forum state."[22] This latter, three-part test is known as the *Calder* effects test.[23] The purpose of this inquiry is to determine "whether defendants have voluntarily derived some benefit from their interstate activities such that they 'will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts.'"[24]

Prison employees that participate in the extradition of an inmate to another state but have little or no direct interaction with anyone in the other state as part of that extradition do not purposely direct their actions at the other state. In *Lee v. City of Los*

---

[19] *Burri Law*, 35 F.4th at 1212.
[20] *See id.* at 1213.
[21] *Id.*; *Lee v. City of L.A.*, 250 F.3d 668, 695 (9th Cir. 2001) (presumptively reasonable).
[22] *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 604, 606 (9th Cir. 2018) (saying that intentional torts committed within the forum state satisfy this first element); *Burri Law*, 35 F.4th at 1213 (citing *Calder v. Jones*, 465 U.S. 783, 788-89 (1984)) (discussing the test for actions committed outside of the forum state); *see also Glob. Commodities*, 972 F.3d at 1107 (referring to this element as the "purposeful direction" test, but mentioning that the line is sometimes blurred between this test and the "purposeful availment" test).
[23] *Burri Law*, 35 F.4th at 1213.
[24] *Glob. Commodities*, 972 F.3d at 1107 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985)).

*Angeles*, 250 F.3d at 694, the Ninth Circuit found purposeful direction when prison employees extensively interacted with officials in the other state for purposes of an extradition, both through communication and travelling to the other state. This distinguished the defendants from the defendants in another case who – despite helping with an extradition – had no direct interaction with anyone in the other state and therefore did not purposefully direct their actions toward the forum state. *Id.* In *Soler v. County of San Diego*, 762 F. App'x 383, 385-86 (9th Cir. 2019), the Ninth Circuit found purposeful direction because prison employees were "directly and significantly involved" in extradition efforts. Specifically, those employees either made multiple contacts by phone and email with officials in the other state or signed critical documents related to contacting the other state. *Id.*

Here, none of the KDOC Defendants are domiciled in Arizona, so the Court lacks general personal jurisdiction over them. No alleged acts by the KDOC Defendants occurred in Arizona, so the question for specific personal jurisdiction becomes whether their actions were purposely directed at Arizona. The KDOC Defendants participated as prison employees in the extradition of an inmate from Kansas to Arizona but had little or no direct interaction with anyone in Arizona as part of that extradition, so their actions were not purposely directed at Arizona. Therefore, the Court lacks both general and specific personal jurisdiction over the KDOC Defendants.

II. **Venue is improper in Arizona as to the KDOC Defendants because they reside in Kansas and their actions allegedly occurred in Kansas.**

Even if the court in a judicial district has personal jurisdiction over the parties, venue can still be improper. *Steen v. Murray*, 770 F.3d 698, 703-04 & n.3 (8th Cir. 2014). The validity of venue can also vary by claim; venue can be valid for one claim and not

7

for another. *See* Fed. R. Civ. P. 12(b) (allowing a party to assert the defense of improper venue as a "defense to a claim"); *Anrig v. Ringsby United*, 603 F.2d 1319, 1324 (9th Cir. 1978) (holding that venue was improper for some claims but not others); 28 U.S.C. § 1391(b) (using the terms "civil action" and "claim" interchangeably for purposes of determining improper venue). Under 28 U.S.C. § 1391(b), a civil action can be brought in federal district court: (1) in a judicial district in a state where all defendants reside, (2) in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or (3) if no judicial districts meet these requirements, any judicial district in which any defendant is subject to the court's personal jurisdiction. "Defendants" in this statute means only "indispensable defendants" to each claim, *Anrig*, 603 F.2d at 1324, which does not include joint tortfeasors. *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990). When venue is proper for one claim and not for another, "the accepted and . . . just procedure is to sever, as permitted by Fed. R. Civ. P. 21, and dismiss or transfer only the claims against those parties as to whom venue is improper." *Anrig*, 603 F.2d at 1324.

Here, with regard to the claims against the KDOC Defendants, the KDOC Defendants reside in Kansas, not Arizona, so not all defendants reside in Arizona. None of their actions even allegedly occurred in Arizona. Although some actions by Defendant Westbrook allegedly occurred on a flight from Kansas to Arizona, Westbrook's alleged conduct is irrelevant to the claims against the KDOC Defendants because Westbrook, merely alleged to be a joint tortfeasor, is not an indispensable party to those claims. Therefore, venue is not supported by residency or the locations of events or omissions underlying the claims against the KDOC Defendants. But the District of Kansas *does* meet these requirements. The KDOC Defendants all reside in Kansas and the alleged events or omissions underlying the claims all occurred in Kansas. Therefore, venue is

*only* proper in the District of Kansas for the claims against the KDOC Defendants. Accordingly, these claims should be severed and either dismissed or transferred.

**III.     Baskin fails to state a claim upon which relief can be granted because his § 1983 Complaint shows he failed to exhaust administrative remedies under the PLRA.**

According to the facts as alleged in the Complaint, the KDOC Defendants' relevant actions occurred on October 23, 2019, when the KDOC Defendants facilitated the transfer of Baskin to the airport. (Doc. 1 at ¶¶ 8-9, 18, 20-27, 35-38, 96.) Baskin sought informal resolution of his concerns from October 23, 2019 through November 16, 2019. (Doc. 1 at ¶ 89.) He filed a grievance with KDOC on November 14, 2019 and resubmitted it on December 3, 2019. (Doc. 1 at ¶ 90-92, 74-76, 82.) Baskin also filed an unrelated grievance on November 16, 2019, with the Saguaro Correctional Center regarding the "denial of Medical Treatment for Plaintiff Baskin" by "CoreCivic Health Care Provider(s)." (Doc. 1 at ¶ 72-73, 75.)

Baskin admits he did not finish appealing any of his grievances to the highest administrative level. (Doc. 1 at 5, 22-23.) He never says he submitted appeals to the HCF warden or to the Kansas secretary of corrections, but says he did not receive a response from the KDOC unit team or the HCF warden. (Doc. 1 at ¶ 90.) "Upon expiration of the answer/appeal time period" for the KDOC grievance, Baskin "conversed with Kansas Contract Monitor Mr. Moore" on December 30, 2019. (Doc. 1 at ¶ 93.) Baskin claims that his ability to exhaust was impeded, and alleges as facts that an Arizona official would not give him a copy of his Arizona grievance on December 11, 2019, that the same official did not drop what he was doing to immediately talk to Baskin after Baskin made a vague request to talk on December 23, 2019, and that the Arizona warden threatened Baskin on December 30, 2019. (Doc. 1 at ¶¶ 78, 85-88, and at pgs. 5, 22-23.)

### A. Exhaustion of administrative remedies is mandatory under the PLRA.

The PLRA requires an inmate to exhaust all available administrative remedies before bringing a § 1983 claim about prison conditions. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 520 (2002). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). "[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "An inmate properly exhausts a claim by utilizing each step the prison holds out for resolving the claim internally and by abiding 'with an agency's deadlines and other critical procedural rules.'" *Gray v. Sorrels*, 818 F. App'x 787, 789 (10th Cir. 2020) (quoting *Woodford*, 548 U.S. at 90).[25] "In other words, a prisoner must comply with procedural 'rules that are defined not by the PLRA, but by the prison grievance process itself.'" *Williams v. Hill*, 422 F. App'x 682, 684 (10th Cir. 2011) (quoting *Bock*, 549 U.S. at 218).[26]

In a suit governed by the PLRA, failure to exhaust is an affirmative defense, and the defendant has the burden of proof regarding exhaustion of administrative remedies. *Roberts v. Barreras*, 484 F.3d 1236, 1240-41 (10th Cir. 2007).[27] The issue of Baskin's failure to exhaust his available remedies prior to filing his lawsuit must be determined before addressing the merits of his suit. *See Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010).[28] Failure to exhaust can support a 12(b)(6) dismissal when clear from the face

---

[25] *See also Sapp v. Kimbrell*, 623 F.3d 813, 818 (9th Cir. 2010) (requiring exhaustion at each administrative step); *Fordley v. Lizarraga*, 18 F.4th 344, 351 (9th Cir. 2021) ("inmates must comply with the prison's 'deadlines and other critical procedural rules'") (quoting *Woodford*, 548 U.S. at 90).
[26] *See also Manley v. Rowley*, 847 F.3d 705, 711-12 (9th Cir. 2017) (quoting *Bock*, 549 U.S. at 218).
[27] *See also Fordley*, 18 F.4th at 350-51.
[28] *See also McKinney v. Carey*, 311 F.3d 1198, 1199-1200 (9th Cir. 2002) (quoting *Perez*

of the complaint.²⁹

Grievances involving the responsibilities of the sending state should be filed with the sending state.³⁰ The KDOC Grievance Procedure for Inmates is set forth in K.A.R. § 44-15-101 *et seq.*, and applies "to a broad range of matters that directly affect the inmate, including . . . [c]omplaints by inmates regarding policies and conditions within the jurisdiction of the facility or the department of corrections; and . . . actions by employees and inmates, and incidents occurring within the facility." K.A.R. § 44-15-101a(d)(1). Here, this regulation applies to Baskin's § 1983 claim because his Complaint involves the alleged actions of Hutchinson Correctional Facility (HCF) employees. *See Lindsey v. Cook*, No. 19-3094-HLT, 2021 WL 483855, at *2 (D. Kan. Feb. 4, 2021).

Here, any grievances involving the responsibilities of Kansas, the sending state, should be filed with the state of Kansas. So grievances filed with Arizona do not exhaust administrative remedies for purposes of the claims against the KDOC Defendants. (This is especially so when, as here, those grievances involve actions by defendants other than the KDOC Defendants.) In Kansas, an inmate must take four steps to complete the grievance process: (1) attempt an informal resolution with unit team members; (2) submit a grievance to an appropriate unit team member; (3) submit a grievance to the warden of the facility; and (4) appeal to the secretary of corrections. *Lindsey*, 2021 WL 483855, at *2; K.A.R. §§ 44-15-101(b), (d), 44-15-102(a)-(c). Step two must occur within 15 days

---

v. *Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999)).
²⁹ *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (citing *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007)).
³⁰ *See Sims v. Kan. Dep't of Corr.*, No. 18-01259-EFM, 2020 WL 707989, at *5 (D. Kan. Feb. 12, 2020); *Trujillo v. Williams*, No. CIV-04-0635, 2010 WL 11505952, at *4 (D.N.M. Oct. 5, 2010); *Baltas v. Maiga*, No. 3:20cv1177, 2022 WL 3646199, at *11 (D. Conn. Aug. 24, 2022).

of discovery of the issue, not counting weekends or holidays. *See* K.A.R. § 44-15-101b. If the inmate does not receive a response at steps two or three within ten days, the inmate can move to the next step in the process but must do so within three days of that deadline. *Lindsey*, 2021 WL 483855, at *3; K.A.R. § 44-15-102(a)(2), (b), (b)(3)(A)(ii), (G), (c)(1).

**B. Baskin did not complete the KDOC grievance process prior to filing his § 1983 claim.**

"An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under [the] PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).[31] While Baskin has no burden to specially plead or demonstrate exhaustion in his Complaint, *see Bock*, 549 U.S. at 216, the Complaint itself shows that although Baskin began the grievance process on November 8, 2021, he did not complete it. Prior to filing his lawsuit, Brown sought informal resolution and filed a grievance, completing the first two steps of the KDOC grievance process. (Doc. 1 at ¶¶ 89-92, 74-76, 82.) Baskin did not receive a response to his grievance, and the time for the KDOC unit team to respond expired. (Doc. 1 at ¶ 93.) But Baskin admits that the time to appeal also expired. (*Id.*) And he did not appeal as required. (Doc. 1 at 22-23.) Instead, he simply "conversed with Kansas Contract Monitor Mr. Moore" on December 30, 2019. (Doc. 1 at ¶ 93.) Therefore, he did not complete steps three or four of the KDOC grievance process.

Baskin alleges Arizona officials impeded his ability to exhaust, but, as this Court has stated, Baskin "fails to allege facts to support that he was denied access to the

---

[31] *See also Neese v. Arpaio*, 397 F. Supp. 2d 1178, 1180 (D. Ariz. 2005) ("To fully exhaust a section 1983 claim, a prisoner must pursue his inmate grievance to the highest administrative level available to him."); *Morgan v. Maricopa Cnty.*, 259 F. Supp. 2d 985, 990 n.13 (D. Ariz. 2003) (saying it would be legally futile for a prisoner to argue exhaustion after completing only one step of a multi-step grievance process).

grievance process." (Doc. 14 at 11:1-2.) Baskin's first KDOC grievance on November 14, 2019, met the 15-day time limit for step two of the KDOC grievance process. Even if the deadline for step three was tolled until the second KDOC grievance on December 3, 2019, Baskin's deadline to have appealed to the HCF warden from that second KDOC grievance was December 16, 2019. *See* Kan. Admin. Regs. (K.A.R.) § 44-15-102(a)(2), (b). The failure of an Arizona official to provide a copy of Baskin's Arizona grievance on December 11, 2019, would not reasonably have impeded any attempts by Baskin to appeal his KDOC grievance to the HCF warden. Alleged actions by Arizona officials after December 16, 2019, could not have affected any attempts by Baskin to appeal to the warden. Even if Baskin's statement that he did not receive a response from the HCF warden means that he timely filed an appeal to the HCF warden, the latest deadline for him to appeal to the Kansas secretary of corrections would have been December 29, 2019. *See* K.A.R. § 44-15-102(b)(3)(A)(ii), (G), (c)(1). An Arizona official not immediately dropping what he was doing to talk to Baskin after Baskin made a vague request to talk on December 23, 2019, would not reasonably have impeded any attempts by Baskin to appeal to the Kansas secretary of corrections. And the alleged threats on December 30, 2019, could not have impeded the KDOC grievance process as they occurred after all relevant deadlines had passed.

Steps three and four are required steps for exhaustion under the PLRA, *see* K.A.R. §§ 44-15-101(d), 44-15-102(a)-(c), and Baskin did not complete them before pursuing his § 1983 claim. So Baskin fails to state a claim due to his failure to exhaust as shown by the Complaint itself. This Court, or the District of Kansas if the case is transferred, should grant dismissal in Defendants' favor for failure to state a claim.

## IV. The Court should dismiss the claim rather than transfer it because the District of Kansas would dismiss the case for failure to exhaust administrative remedies.

If the Court lacks either jurisdiction or proper venue or both, the Court can transfer the case to another judicial district if the transfer would be "in the interest of justice" and the judicial district receiving the transferred case has jurisdiction and would be a proper venue. 28 U.S.C. §§ 1631 (addressing transfers for lack of jurisdiction), 1406 (addressing transfers for improper venue). The jurisdiction-specific transfer statute, § 1631, applies to cure defects in either subject-matter jurisdiction or personal jurisdiction.[32] The venue-specific statute, § 1406, applies to cure defects in venue. *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 55 (2013). Even if this Court has personal jurisdiction and proper venue under § 1391, the Court can still transfer a case "[f]or the convenience of parties and witnesses, in the interest of justice," under yet another transfer statute, 28 U.S.C. § 1404, to another federal court that also has proper venue. *Id.* at 59-61.

---

[32] *Franco v. Mabe Trucking Co.*, 3 F.4th 788, 792-95 (5th Cir. 2021) (citing *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 761-62 (9th Cir. 1990)). The *Franco* case stated that "no circuit split currently exists on this issue." *Id.* at 795. Although Wright & Miller says "the courts are rather evenly divided on the subject" of whether § 1631 applies to transfers for lack of personal jurisdiction, 15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3842 (4th ed. Apr. 2022 update), *Franco* pointed out that "only some district courts – and no circuit courts – have actually adopted the view that § 1631 does not apply to a transfer to cure a lack of personal jurisdiction." *Franco*, 3 F.4th at 794-95. Technically, Wright & Miller cites to a Third Circuit opinion, *In re IMMC Corp.*, 909 F.3d 589, 591-96 (3d Cir. 2018), but that Third Circuit case has since been implicitly overruled, *Rice v. Electrolux Home Prods., Inc.*, No. 4:15-CV-00371, 2020 WL 4700676, at *2 to *3 (M.D. Penn. Aug. 13, 2020) (citing *In re IMMC Corp.*, 909 F.3d at 596, and *Danziger & De Llano, LLP v. Morgan Verkamp, LLC*, 948 F.3d 124, 132 (3d Cir. 2020)) (saying that the Third Circuit currently holds that § 1631 applies to transfers for lack of personal jurisdiction), and Wright & Miller cites no other appellate opinions holding otherwise. If the Court were to find that § 1631 does not apply to transfers for lack of personal jurisdiction, then the Court could still use § 1406 for that kind of transfer. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) (holding, before § 1631 was enacted, that § 1406 authorized the transfer of cases to cure venue defects even when personal jurisdiction was lacking).

"In general, transfer is preferable to dismissal. . . . It saves the parties time, energy, money, and inconvenience."[33] Facts that can weigh in favor of transfer include if a proper venue can be clearly identified, if dismissal would cause the statute of limitations to run, or if the defendant has misled the plaintiff on facts related to venue.[34] But "[t]ransferring a case that would be dismissed does not further the interests of justice." *Brown v. Kimoto*, Civ. No. 08-00055, 2008 WL 647555, at *3 (D. Haw. Mar. 7, 2008), *aff'd by* 291 F. App'x 50, 51 (9th Cir. 2008); *see also Clark v. Busey*, 959 F.2d 808, 812 (9th Cir. 1992) ("Transfer is . . . improper where the plaintiff fails to make a prima facie showing of a right to relief").

Here, although a proper venue can be clearly identified (that is, the District of Kansas), and dismissal may cause the statute of limitations to run,[35] transferring this case when it would simply be dismissed would not further the interests of justice. As argued above, the District of Kansas would dismiss this case because Baskin's failure to exhaust administrative remedies is clear from the Complaint. So if the Court lacks personal jurisdiction or proper venue, the case should be dismissed rather than transferred.

Or, in the alternative, the case should be transferred to the District of Kansas for lack of personal jurisdiction under 28 U.S.C. § 1631, lack of proper venue under 28 U.S.C. § 1406, or "for the convenience of parties and witnesses, in the interest of justice"

---

[33] *Nat'l Cas. Co. v. Burns & Wilcox Ltd.*, No. CV-19-04854-PHX-DWL, 2020 WL 4039119, at *14 (D. Ariz. July 17, 2020) (citing 14D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3827, n.32.50 (2020)).
[34] *Id.* (proper venue can be identified); *Hahn v. Waddington*, 694 F. App'x 494, 495 (9th Cir. 2017) (statute of limitations would run); *Manley v. Engram*, 755 F.2d 1463, 1468-69 (11th Cir. 1985) (defendant misled plaintiff).
[35] *See* K.S.A. 60-513(a)(4); *M.A.C. v. Gildner*, 853 F. App'x 207, 209 (10th Cir. 2021) (citing *Hamilton v. City of Overland Park*, 730 F.2d 613, 614 (10th Cir. 1984)).

under 28 U.S.C. § 1404.[36]

## CONCLUSION

For the reasons above, the KDOC Defendants request that the Court sever the claims against the KDOC Defendants and either dismiss those claims due to lack of personal jurisdiction, improper venue, or failure to state a claim or, alternatively, transfer those claims to the District of Kansas.

DATED this 3rd day of January, 2023.

Respectfully submitted,

OFFICE OF KANSAS ATTORNEY GENERAL
DEREK SCHMIDT

*/s/ Matthew L. Shoger*
Assistant Attorney General Matthew L. Shoger
*Attorney for Defendants*

---

[36] The KDOC Defendants add, for if the court reaches a § 1404 analysis, that the KDOC Defendants are employed by the state of Kansas and are defended by the Office of the Kansas Attorney General located in Topeka, Kansas.

# **CERTIFICATE OF SERVICE**

   I hereby certify that on this 3rd day of January, 2023, the foregoing document was filed with the clerk of the court by using the CM/ECF system, with copies to be served by means of first-class mail on the 4th day of January, 2023, postage prepaid, addressed to:

Benton Gene Baskin #52888
Hutchinson Correctional Facility - Central
P.O. Box 1568
Hutchinson, KS 67504
*Plaintiff, pro se*

Courtney Lacaillade
Struck Love Bojanowski & Acedo, PLC
3100 W. Ray Road, Suite 300
Chandler, Arizona 85226
*Attorney for Defendant Westbrook*

              */s/ Matthew L. Shoger*
              Matthew L. Shoger
              Assistant Kansas Attorney General