STATE OF ARIZONA    )
                    )    SS: AFFIRMATION
COUNTY OF PINAL     )

    I, the undersigned, being, duly sworn upon my oath, depose and state that I have subscribed to the foregoing Kansas Department of Corrections Inmate Grievance; that I know the contents thereof; that it includes every ground known to me regarding the Eighth Amendment Rights Violation(s) for Cruel and Unusual Punishment, Deliberate Indifference, Denial of Medical Treatment, Unnecessary Wanton Infliction of Pain, and Mental/Emotional Injury, Occurring on October 23, 2019; attacked in this Grievance; and that the matters and allegations therein set forth are true.

                                        _Benton W Ba_____

                                       Saguaro Correctional Center

                                       1252 E. Arica Road

                                       Eloy, Arizona 85131

STATE OF ARIZONA    )
                    )    SS: VERIFICATION
COUNTY OF PINAL     )

    I, Benton G. Baskin, #52888, being, duly sworn upon my oath, depose and state that I know the contents thereof; that it is being submitted to Saguaro Correctional Center Administration to be Electronically Scanned and Transmitted to the (KDOC) Kansas Department of Corrections - Hutchinson Correctional Facility Central - To be processed on this 3rd day of December, 20 19, signed and verified by the below authorized Saguaro Correctional Staff.

J. Wildermuth OTM
Kansas Department of
Corrections 12.03.2019

Saguaro Authorized Staff

_Benton W B_____
Benton G. Baskin, I/M #52888

" EMERGENCY "

# KANSAS DEPARTMENT OF CORRECTIONS INMATE GRIEVANCE FORM

**INMATE COMPLAINT**

Inmate's Name BASKIN, BENTON, G.         Number 52888

Facility H.C.F. CENTRAL    Housing Unit E-DORM #36    Work Detail E-CUSTODIAN/BARBER

**NATURE OF COMPLAINT** BE SPECIFIC. (Include names, dates, places, rules, regulation, etc.; how you have been affected and action you believe the Warden should take.) Use additional paper if necessary. ATTACH DOCUMENTATION OF ATTEMPTS AT INFORMAL RESOLUTION PRIOR TO FILING THIS FORMAL GRIEVANCE (i.e. Form 9s or other correspondence and response from staff member). Informal Resolution prior to filing this Grievance was carried out by Saguaro Correctional Center Warden - Mr. T. Thomas, and Further followed up by Kansas Contract Monitors - K. Schmidt, B. Walmsley, Secretary of Corrections - Jeff Zmuda, M. Waldock, Carolyn Graves, and J. Perkins of El Dorado Correctional Facility - Beginning October 23, 2019 thru November 14, 2019. On October 23, 2019 - @ approximately 3:00 a.m., I, Benton G. Baskin, #52888 - was escorted to Admissions & Discharge by H.C.F. Central SORT Officers for processing and preparation of physical restraints for Transportation to Saguaro Correctional Center. Upon finishing the soda and candy I consumed, I reported to the next available SORT Officer unknown by name, whom applied the ankle, waist, and wrist restraints to me. The Unknown SORT Officer whom I can only describe as an middle aged gentlemen with an ex Navy Military Background Upon the Officer securing the physical restraints, I immediately...(SEE ADDITIONAL PAGES)

Date this report was given to Unit Team for informal resolution (to be completed by inmate) November 14, 2019

*Benton G Baskin*

**UNIT TEAM RESPONSE** (Complete and return to inmate within 10 calendar days.)

                                             Unit Team Signature            Date

**INMATE RESPONSE** (Complete and return to Unit Team within 3 calendar days)

_____ I am satisfied with the Unit Team response and wish to withdraw my formal grievance.

_____ I am not satisfied with the Unit Team response, and wish to forward to the Warden's office. (This must be done within 3 calendar days.) Date forwarded to Warden's Office (to be completed by staff). _____

Inmate Signature                                          Date

**WARDEN RESPONSE** (Complete, attach response and return within 10 Working days.)

Date Received _____    Date of Final Answer _____    Date Returned to Inmate _____

Inmate's Signature            Date      Unit Team Signature            Date

If dissatisfied with this response, the inmate may appeal to the Secretary of Corrections within three (3) calendar days of receipt of this decision from the Warden.

**TO BE COMPLETED BY STAFF ONLY**

Grievance Serial Number _____

Type of Complaint (Item 4: Code 01-75) _____

Cause of Complaint (Item 5: Code 01-30) _____

Type of Response (Item 6a: Code 01,02,08 or 09) _____

2

Tear off and give to inmate when submitted to Unit Team through receiving staff.

Inmate Name: Baskin, Benton          Number: 52888

Receiving Staff Signature: Wildermuth, Lindsey          Date: 12.3.2019

**Effective Date (3-18-96) P-157**

PG 3

(margin annotation: ton Gene Baskin v. Todd Thomas, et al., Case 5:23-cv-03212-JAK-HDM, Exhibit A)

Enton Gene Baskin V, Todd Thomas, et al., Case 5:23-CV-03212-JAR-ADM, Exhibit A

KANSAS DEPARTMENT OF CORRECTIONS INMATE GRIEVANCE
ATTACHMENT OF ADDITIONAL PAGES

BASKIN, BENTON, G.                                              52888

H.C.F. CENTRAL / SAGUARO CORRECTIONAL FACILITY    E-DORM #36    E-CUSTODIAN/BARBER

NATURE OF COMPLAINT   - CONTINUED * ... informed him that the wrist cuffs were too tight, and asked the Officer if he would loosen and/or re-adjust the wrist restraints, the officer then gave me a directive to hold up my arms, I proceeded to do so with great difficulty and pain, upon following the directive given, I managed to hold my arms up for the Officer, after inspecting the wrist restraints, the Officer replied: " That's all the slack i can give you." The awaiting Transport SORT Officer(s) then gave all of the Inmates in the sallyport a directive to board the Transport Vehicle.
    Upon boarding the Transport Vehicle, and being seated I asked SORT Officer Diaz, if he would loosen the wrist restraints, Officer Diaz, then stated: " Why did'nt you have the Officer whom put them on you, to loosen them? " I responded by stating that I did ask him, but he refused to do so. Officer Diaz seemingly ignored me, frustrated I sat down and endured the pain.
    Both SORT Transport Officers unboarded the Transport Vehicle and returned back inside Hutchinson Correctional Facility Central Admissions and Discharge Area, after about 10-15 minutes SORT Officer Diaz and Co-worker re-boarded the Transport Vehicle carrying a crate and industrial sized cooler containing sack lunches. Officer Diaz and Co-worker entered the Inmate Transport Area and began handing out sack lunches, once each Inmate received a sack lunch, I asked Officer Diaz, how am i supposed to eat the sack lunch, and I further requested Officer Diaz to at least place the waist chains around my stomach, which would enable me to reach my mouth. Officer Diaz, ignored my request again. Upon securing the Inmate area Both Officer Diaz & Co-worker exited the Transport Vehicle.
    After Officer Diaz reboarded the passenger area of the Transport Vehicle, I again attempted to have SORT Officer Diaz to re-adjust the wrist restraints due to the nature that both of my arms began to swell enormously and the right cuff began cutting into my right wrist. Officer Diaz response was: " Be patient we have a short ride ahead of us, we will get you taken care of then."
    I was forced to endure mental/emotional and physical injury from the Officer's refusal to make the necessary adjustments and injury from the wrist retraints during the 1 ½ hour trip to El Dorado Correctional Facility Central.
    Upon arrival at the El Dorado Correctional Facility, I began to irritably complain about my wrists' diverting my questions toward the Co-worker about loosening the cuffs around my wrists' and was ignored by him as well. After passing the inspection point the Transport Vehicle docked at it's designated area, and after some time had passed, all Inmates were given the directive to unboard the Transport Vehicle and enter into the A & D Holding Cell. Once inside the Holding Cell other Inmates looked at my wrists' & arms in utter disbelief, as my arms were swollen beyond recognition. As time passed, I continued to speak through the door to the El Dorado SORT Officers, in an attempt to garner their attention, but to no avail did any of them respond, Then while standing at the door close to the sallyport I spotted an H.C.F. Central SORT Officer, that I was familiar with, I believe his name is Reu, It was then that the holding cell door was opened and the SORT Ofiicer allowed me to enter the seating area, where he attempted to remove the wrist restraints so that he could re-adjust them, successful, the SORT Officer then tried to re-apply the wrist restraints, but noticed that they were

1A

KANSAS DEPARTMENT OF CORRECTIONS INMATE GRIEVANCE
ATTACHMENT OF ADDITIONAL PAGES


BASKIN, BENTON, G.                                          52888

H.C.F. CENTRAL / SAGUARO CORRECTIONAL FACILITY    E-DORM #36   E-CUSTODIAN/BARBER


NATURE OF COMPLAINT  - CONTINUED *  ... too small, after clicking both wrist cuffs twice, he noticed how swollen my arms were and the indentions the cuffs left on my wrists'. (Further) either the H.C.F. SORT Officer or the E.D.C.F. Correctional Officer notified the E.D.C.F. Medical Staff informing them of the condition of my arms and wrists' (Because) upon on returning to the holding cell and being seated, while trying to maintain sanity from the oppression of the restraints, The holding cell doors opened again, and an E.D.C.F. Officer gave me a directive to exit the cell and follow him to the Nurse's Station, where my vitals were taken and it was at that time the Nurse asked me if I were on Blood Pressure Meds, I responded " No " The Nurse the stated that my Blood Pressure was extremely high, further questioning whether or not I was okay, I stated " No " because I was having an anxiety attack, due to the nature I could'nt get any relief. After the Assesment was made, I was then escorted back to the holding cell.

   Due to the nature that I did not have on a watch nor was a clock available, I can only speculate the amount of time which elapsed before the Transport Vehicle departed from El Dorado Correctional Facility en route to the Salina, Kansas Airport was about 1 ½ hours giving a projected depature time of 6:00 a.m., during the travel time to Salina, I continuously requested SORT Officer Diaz and Co-worker to adjust the wrists' restraints to provide me with some relief, as well as to help subside the swelling of my arms and wrists', both Officer(s) ignored me, all the while turning the heat and radio up, to thwart my complaints. Upon arriving at the Salina Airport, I again, attempted to Communicate with Officer Diaz about the Cuffs and the effect that they were having on me, but to no avail did Officer Diaz respond.

   After about 30 minutes had elapsed, (2) unknown men boarded the Transport Vehicle announcing themselves as Employees of (TCA) Trans Corporation of America, The Supervisor stated that his Name was Mr. Westbrook, I addressed my concerns and the issue regarding of the wrists' restraints and the effect that they were having on me, Mr. Westbrook, stated that as soon as the Plane is ready to be Boarded, then his staff would make the necessary adjustment to everyone's wrists' restraints. After about an hour of sitting on the Transport Vehicle, the doors opened and directives were given, requiring all Inmates to exit the Vehicle and to be paired into groups of three to board the Plane, Upon my turn to exit, I immediately requested that the Officer whom Joined me to Inmate Jace Moore, #110156 and William Bemis, #75119 - to please re-adjust my wrists' restraints, seemingly to ignore my request another Officer stated that as soon as I boarded the plane that the (TCA) Trans Corp of America Staff would take care of me.

   Once on the Plane, the time was 9:00 a.m., Seated, I continued to respectfully complain about the wrist restraints, and conveyed to the TCA Staff whom seated me, what their Supervisor Mr. Westbrook, confirmed, again my request was denied.
The (TCA) Staff continued to Seat Inmates until the Plane was full to capacity, I would soon find out that the (TCA) Staff was awaiting for other Kansas Department of Corrections Transport Vehicles and Vans to Arrive with Inmates from Ells Worth, Correctional Facility, Lansing Correctional Facility, El Dorado Correctional Facility, and Hutchinson Correctional Facility. I would soon find out that the time was 11;30 a.m., Once the Pilot and all of the TCA staff boarded the plane and the engine started, is when TCA Staff began at the front of the Aircraft re-adjusting Inmates wrists' restraints.

KANSAS DEPARTMENT OF CORRECTIONS INMATE GRIEVANCE
ATTACHMENT OF ADDITIONAL PAGES

BASKIN, BENTON, G.                                                     52888

H.C.F. CENTRAL / SAGUARO CORRECTIONAL FACILITY    E-DORM #36   E-CUSTODIAN/BARBER

NATURE OF COMPLAINT - CONTINUED * ... Upon engaging into another conversation with (TCA) Trans Corporation of America - Supervisor Mr. Westbrook, to have the unnecessary and wanton infliction of pain relieved, which were caused by the wrist restraints. Mr. Westbrook's response was: " If you, ask me one more time about loosening those cuffs, I will leave them like they are. " Inmates Jace Moore, #110156, William Bemis, #75119 - witnessed the conversation between - (I) Benton G. Baskin, #52888, as we were chained together and seated in the same section. - Mr. Westbrook. Frustrated and in great pain, I exerted self-control and continued to deal with the swelling and cuffs cutting into my wrists' and arms. Upon the unknown (TCA) Employee whom arrived at the rear of the Aircraft, and began re-adjusting cuffs for Inmates whom also had the same complaint about their cuffs being too tight, also heard the exchange between (Me) & Mr. Westbrook. Upon the unknown (TCA) employee arriving at my designated seating arrangement, Inmate(s) Jace Moore, William Bemis, and Benton G. Baskin, instructed the trio to stand up and move into the walk way to access all of the chains conjoining (us) removing the waist chains, and Black Security Block, the employee was able to access my wrist cuffs, standing an isle or two ahead, Mr. Westbrook instructed the unknown employee to remove the cuffs and give one click, the employee followed the instructions given by Mr. Westbrook, but upon observation of my wrists' & arms the (TCA) employee conveyed to Mr. Westbrook, that I needed Big Boy Cuffs, Mr. Westbrook, stated that he did'nt have any " Big Boy Cuffs " on him, the unknown (TCA) employee responded by saying that there are some up front, The (TCA) employee then re-secured the wrist cuffs, belly chains and conjoining chains, and re-seated Inmate(s) Moore, Bemis, and Baskin, assuring Me, that he would work on getting the Big Boy Cuffs for me. Before being totally seated, I politely requested that the (TCA) employee to at least place the waist chains above my stomach, so that I could eat the sack lunch I was provided with, the employee complied with my request, and returned us to the assigned seating arrangement. Upon retreating to the front of the Aircraft, the unknown employee reassured Me that he would see about getting me some Big Boy Cuffs. Frustrated, I sat and endured the pain and swelling, which caused me to go into a state of unconsciousness. Upon awakening while still in flight, Inmate Billy MC Caslin, #62412 - raised his arms revealing some white plastic zip tie cuffs, and asked me if they changed mines out yet, I replied " No " Also, inquiring where the (TCA) employee whom had given Inmate MC Caslin, the Plastic zip tie cuffs were, after visually searching, i noticed the same employee coming from the rear of the plane. I engaged into a respectful conversation with the said employee in regard to him issuing me a pair of the big boy cuffs or the cuffs applied to Inmate MC Caslin, his response was: " Sorry, we gave them all out. " I then expressed my concerns and re-affirmed to him the Pain & Swelling. The (TCA) employee apologized again and walked away. Seemingly defeated I endured the wanton infliction of pain for what seemed to be an eternity, but was the course of two hours or more.

    Upon landing at the Arizona Airport, I was again forced to be seated on the Airplane until all of the Inmate(s) were unloaded into Saguaro Correctional Center Transport Vehicles, Vans, and Chartered Limo Buses. Being the last Inmate(s) to unboard the Airplane, Myself and (9) other Inmates were accomodated with the Privilege to travel aboard the Black Limo Chartered Bus with (TCA) Supervisor Westbrook, and Nurse. During the 1 ½ hour Travel time to Saguaro Correctional Center, I continued to alert

3A

*Benton Gene Baskin v. Todd Thomas, et al., Case 5:23-cv-03212-JAR-ADM,     Exhibit A*

KANSAS DEPARTMENT OF CORRECTIONS INMATE GRIEVANCE
ATTACHMENT OF ADDITIONAL PAGES

BASKIN, BENTON, G.                                                    52888

H.C.F. CENTRAL / SAGUARO CORRECTIONAL FACILITY    E-DORM #36    E-CUSTODIAN/BARBER

NATURE OF COMPLAINT  -  CONTINUED * ... Mr. Westbrook, of the pain I was enduring. His response was: " You will get them taken off, as soon as we get to the Facility. "
    Upon arriving at Saguaro Correctional Center, there was further delay due to the security inspection of each Transport Vehicle, Van, and the Black Limo Chartered Bus. Being the last Bus to arrive, we were processed in that order. Upon entering the Back of Kilo Bravo Unit, I was escorted through a maize of inspection points, beginning with the K-9 Unit Cage Search, Followed by removal of the ankle waist, and wrist restraints, Last but not least a Strip Search of my Person, Afterward I was directed to stand in a line to be ex-rayed, during this time I was greeted by Mr. T. Thomas, whom identified himself as being the Warden of Saguaro Correctional Center, I then directed Mr. T. Thomas' attention to the injuries caused by the wrist restraints, as well as the deliberate indifference shown by the (TCA) Staff. Mr. T. Thomas, observed the swelling, blisters, and cut on my right arm and left. Mr. T. Thomas, expressed his empathy for the situation, and did assure (Me) that he would take care of it, occurring on October 23rd, 2019 - @ approximately 3:00 p.m. - I, Benton G. Baskin, #52888 was forced to endure a wanton infliction of pain, cruel and unusual punishment, mental/emotional injury, and physical injury - A violation of Mr. Baskin's Eighth Amendment Rights under the United States Constitution - This Grievance is in Con-junction with the Saguaro Correctional Center 14-5B Inmate Grievance filed on November 16, 2019. Stemming from Core Civic - APN Gerald Walker's refusal and denial of Medical Treatment, Non-Medical Staff's Deliberate Indifference, to the Injury sustained, and the mental/emotional injury as a result.

    FURTHER, EXHAUSTION OF ADMINISTRATIVE REMEDIES - The PLRA states that "[n]o action shall be brought with respect to prison conditions ... by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a).
    On November 5, 2019 - Saguaro Correctional Center Warden Mr. T. Thomas, Granted I, Benton G. Baskin, #52888 - Authorization to proceed with Saguaro 14-5B Grievance procedure in accordance with the exhaustion of available administrative remedies for the Eighth Amendment Violations stemming from Core Civic Medical APN Gerald Walker's denial to medical treatment, and as mentioned above.

    FURTHER, EXHAUATION OF ADMINISTRATIVE REMEDIES  - The PLRA also states that " [n]o federal action may be brought by a prisoner confined in a jail prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C.A § 1997e(e).
    On October 23, 2019 thru November 16, 2019 - I, Benton G. Baskin, #52888 - Satisfied the Informal Resolution process via the following Kansas Contract Monitor(s), Secretary of Corrections, and Deputy Secretary Corrections - K. Schmidt, B. Walmsley, C. Graves, M. Waldock, and J. Perkins - Jeff Zmuda and Joel Hrabe - Prior to proceeding with the Kansas Department of Corrections Inmate Grievance to meet the Exhaustion of Administrative Available Remedies of U.S.C.A. § 1997e(a) & 1997e(e) - before filing 42 U.S.C. § 1983 for the Eighth Amendment Rights Violation - Cruel and Unusual Punishment, Deliberate Indifference, The Unnecessary Wanton Infliction of Pain, and Mental/Emotional Injury - stemming from the physical injury sustained from the wrist

4A

Benton Gene Baskin v. Todd Thomas, et al., Case 5:23-cv-03212-JAR-ADM, Exhibit A

Benton Gene Baskin v. Todd Thomas, et al., Case 5:23-cv-03212-JAR-ADM, Exhibit A

KANSAS DEPARTMENT OF CORRECTIONS INMATE GRIEVANCE
ATTACHMENT OF ADDITIONAL PAGES

BASKIN, BENTON, G.                                              52888

H.C.F. CENTRAL / SAGUARO CORRECTIONAL FACILITY     E-DORM #36     E-CUSTODIAN/BARBER

NATURE OF COMPLAINT - CONTINUED * ... restraints applied by the Unknown H.C.F. Central SORT Officer, whom can be described as 6 ft 2 Caucasian Male, Navy Military Retired, whom refused to re-adjust the wrist cuffs causing an unnecessary wanton infliction of pain, constituting cruel and unusual punishment, also the deliberate indifference displayed by SORT Officer Diaz, whom ignored Mr. Baskin, forcing him to endure mental/emotional injury during the 12 Hours of Torture - Through out the Bus, Plane, Bus Ride. SORT Officer Diaz, was aware of the injury, thereby refusing to respond as well as correct the condition causing the situation, ignoring Mr. Baskin, showing deliberate indifference. Vance v. Peters, 97 F.3d 987 (7th Cir. 1996); Prison Officials cannot ignore a problem once it's brought to their attention.

(TCA) Trans Corp of America Supervisor Mr. Westbrook, (Failed to) address my condition as well as correct the problem by issuing me the " Big Boy Cuffs " Instead, Mr. Westbrook issued the cuffs to another Inmate, instead of responding to the issues of Mr. Baskin, whom needed immediate attention. Constituting Cruel and Unusual Punishment, Deliberate Indifference, Also, Mental/Emotional Injury - A Violation of Mr. Baskin's Rights under the Eighth Amendment of the United States Constitution.

REQUESTED ACTION: WHEREFORE, Benton G. Baskin, I/M #52888 - Pray that Hutchinson Correctional Facility Central Warden Dan Schnurr (1) Discipline SORT Officer Navy Retired, and Officer Diaz in accordance with the policy and procedures outlined in the (IMPP) Internal Management Policy and Procedures under Code and Conduct - Violating a Prisoner's Eighth Amendment Right(s) under the United States Constitution for Cruel and Unusual Punishment, Unnecessary Wanton Infliction of Pain, Deliberate Indifference, and Mental/Emotional Injury. (2) Require the SORT Officer(s) to attend a course training on how to properly apply Transport Restraints, to ensure that the entire SORT Team, as well as any other authorized staff, do not make the same error in applying Ankle, Waist, and Wrist Restraints on Inmate(s) required to Transfer and/or Transported In State & Out of State, Adjusting the Ankle & Wrist Cuffs with the appropriate One Finger Rule. (3) Upon Transfer back to the Kansas Department of Corrections, corrective measures are taken ensuring that there will not be a re-occurring act of unnecessary wanton infliction of pain, and cruel and unusual punishment upon Mr. Baskin and any other Inmate.

Respectfully Submitted,

*Benton G. Baskin*
Benton G. Baskin, I/M #52888
Grievant

5A