IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**BENTON GENE BASKIN,**

　　**Plaintiff,**

　　v.                                                                 Case No. 23-3212-JAR-ADM

**TODD THOMAS, et al.,**

　　**Defendants.**

## MEMORANDUM AND ORDER

Plaintiff Benton Gene Baskin, a prisoner proceeding pro se, brings this 42 U.S.C. § 1983 action asserting that various prison officials violated the Eighth Amendment by placing handcuffs too tightly on his wrists and failing to adjust them during a prisoner transfer from Kansas to Arizona. Plaintiff originally filed the case in the District of Arizona, and that court transferred the case to this Court. Now only two Defendants remain: Armen Gaboian and Javier Diaz—both corrections officers at Hutchinson Correctional Facility ("HCF").[1] This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 75). The motion is fully briefed,[2] and the Court is prepared to rule on that motion. In his response, Plaintiff also requests additional time for discovery under Fed. R. Civ. P. 56(d). For the reasons explained below, the

---

[1] Before transfer, the District of Arizona dismissed Defendants Todd Thomas, Gerald Walker, Marci Gottfredson, and Daniel Schnurr for failure to state a claim under 28 U.S.C. § 1915A(b)(1). Doc. 14. This Court later dismissed Defendant Westbrook after the parties stipulated to his dismissal. Doc. 101.

[2] Plaintiff filed, in addition to his first summary-judgment response, what the Court construes as a surreply. Doc. 95 ("Plaintiff submits this Response in further support of His Motion [sic]."). D. Kan. Local Rule 7.1(a) and (c) permit three briefs: a supporting brief, opposing brief, and reply brief. Surreplies are permitted rarely and "only with leave of court." *Jones v. BNSF Railway Co.*, No. 14-2616-JAR-KGG, 2016 WL 3671233, at *1 (D. Kan. July 11, 2016). Plaintiff has not sought leave to file his surreply, and the Court declines to grant leave sua sponte because there appears to be no good cause to do so. Therefore, the Court does not consider Plaintiff's surreply.

Court denies Plaintiff's request for additional discovery and grants Defendants' motion for summary judgment.

I.  **Legal Standards**

   *A. Rule 56(a)*

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[3] In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[4] "There is no genuine [dispute] of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party."[5] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[6] A dispute of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[7]

The moving party initially must show the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law.[8] Once the movant has met the initial burden of showing the absence of a genuine dispute of material fact, the burden shifts to the nonmoving

---

[3] Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[4] *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[5] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986)).

[6] *Wright ex rel. Tr. Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[7] *Adler*, 144 F.3d at 670 (citing *Anderson*, 477 U.S. at 248).

[8] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

party to "set forth specific facts showing that there is a genuine issue for trial."[9] The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[10] Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[11] In setting forth these specific facts, the nonmovant must identify the facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[12] A nonmovant "cannot create a genuine issue of material fact with unsupported, conclusory allegations."[13] A genuine issue of material fact must be supported by "more than a mere scintilla of evidence."[14]

Summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to 'secure the just, speedy and inexpensive determination of every action.'"[15] In responding to a motion for summary judgment, a party cannot rest on "ignorance of the facts, on speculation, or on suspicion" to escape summary judgment.[16]

In deciding this motion, the Court is mindful that Plaintiff proceeds *pro se* and therefore construe his filings liberally.[17] But *pro se* plaintiffs may not rely on conclusory allegations to overcome their burden to establish that a genuine issue of material fact exists.[18] The Court

---

[9] *Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[10] *Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[11] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 670–71).

[12] *Adler*, 144 F.3d at 671.

[13] *Tapia v. City of Albuquerque*, 170 F. App'x 529, 533 (10th Cir. 2006) (citing *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004)).

[14] *Black v. Baker Oil Tools, Inc.*, 107 F.3d 1457, 1460 (10th Cir. 1997).

[15] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

[16] *Genzer v. James River Ins. Co.*, 934 F.3d 1156, 1160 (10th Cir. 2019) (quoting *Conaway v. Smith*, 853 F.3d 789, 794 (10th Cir. 1988)).

[17] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[18] *Hastings v. Campbell*, 47 F. App'x 559, 560 (10th Cir. 2002).

cannot assume the role of advocate,[19] nor can the Court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[20]  Finally, a *pro se* litigant is not excused from complying with the rules of the court and is subject to the consequences of noncompliance.[21]

### B. Rule 56(d)

Under Fed. R. Civ. P. 56(d), if a nonmovant states by affidavit that he cannot present facts essential to oppose a motion for summary judgment, the Court may, "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."[22]  The decision whether to grant a Rule 56(d) motion lies within the sound discretion of the court.[23]  The nonmovant must satisfy several requirements to obtain relief under Rule 56(d).  By affidavit, the moving party must explain: (1) what probable facts it can find through further discovery; (2) why those facts are unavailable without additional time; (3) what steps it has taken to obtain those facts; and (4) how additional time will allow it to controvert facts.[24]  Therefore, to successfully invoke Rule 56(d), a party "must 'state with specificity how the additional material will rebut the summary judgment motion'"[25] and that

---

[19] *Hall*, 935 F.2d at 1110.

[20] *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

[21] *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (insisting that *pro se* litigants follow procedural rules and citing various cases dismissing *pro se* cases for failure to comply with the rules)).

[22] Fed. R. Civ. P. 56(d); *Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000) (discussing the standard under pre-amendment subsection (f)).

[23] *Adams v. C3 Pipeline Constr. Inc.*, 30 F.4th 943, 968 (10th Cir. 2021).

[24] *Hamric v. Wilderness Expeditions, Inc.*, 6 F.4th 1108, 1119 (10th Cir. 2021) (citing *Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1110 (10th Cir. 2017)).

[25] *Garcia v. U.S. Air Force*, 533 F.3d 1171, 1179 (10th Cir. 2008) (internal quotation marks omitted) (quoting *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1308 (10th Cir. 2007)).

additional material cannot be "irrelevant to the summary judgment motion or merely cumulative."[26]

## II. Plaintiff's Request for Additional Discovery

Plaintiff asks the Court to allow him additional time for discovery under Fed. R. Civ. P. 56(d). In support of that request, he submitted a declaration (Doc. 91) that identifies many facts he would like time to discover, but he offers no explanation how that additional discovery would help him rebut Defendants' summary judgment motion. Plaintiff identifies three categories of facts that he needs time to discover: (1) facts relating to his difficulty in procuring and submitting a KDOC grievance form, (2) facts relating to his pleas for Gaboian and Diaz to loosen his handcuffs, and (3) facts relating to nonparties' failure to loosen his handcuffs. Plaintiff does not explain why those facts are unavailable to him or what steps he has taken to obtain them.[27] And Plaintiff does not state at all—let alone with specificity—how his offered facts would rebut Defendants' motion. For those reasons alone, Plaintiff's request must fail.[28]

But even if Plaintiff had followed those steps, the discovery that Plaintiff seeks would not help him rebut summary judgment because those facts are either irrelevant or cumulative. The facts relating to administrative exhaustion are irrelevant because Defendants do not argue for summary judgment on the grounds that Plaintiff has failed to exhaust his administrative remedies.[29] Moreover, Defendant identifies various irrelevant facts relating to nonparties' failure

---

[26] *Brandon Steven Motors, LLC v. Landmark Am. Ins. Co.*, No. 19-2659-JAR-GEB, 2020 WL 3412478, at *2 (D. Kan. June 22, 2020) (quoting *Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1554 (10th Cir. 1993)).

[27] Plaintiff points out that he has attempted to obtain photographs of his injuries, *see* Doc. 91 ¶¶ 9–10, but he still does not explain how the facts gleaned from those photographs would help him rebut Defendants' motion.

[28] *See Garcia*, 533 F.3d at 1179.

[29] *See* Doc. 91 ¶¶ 1–14 (detailing Plaintiff's use of KDOC's grievance process).

to loosen his handcuffs,[30] but because neither Plaintiff nor Defendants dispute those nonparties' conduct on summary judgment, those facts are irrelevant. Plaintiff also says that he "need[s] Declarations from KDOC inmates" that will establish (1) that Diaz asked Plaintiff why he "didn't . . . have the officer who put them on [him] . . . loosen the wrist restrains" and (2) that Diaz did not "loosen his restrains before departure from HCF."[31] But Defendants admit the first fact in their motion,[32] and the Court credits the second fact because Plaintiff appears to controvert that fact with support from the record.[33] Thus, additional declarations on either point would be cumulative. In the end, Plaintiff's declaration falls far short of showing how additional time to discover these facts would allow him to controvert Defendants' factual assertions; instead, he points only to irrelevant or cumulative facts that he would do nothing to rebut summary judgment. The Court therefore denies Plaintiff's request for additional time to conduct discovery under Rule 56(d).

**III.    Uncontroverted Facts**

D. Kan. Rule 56.1(a) provides that "[a]ll material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party." Although Plaintiff did not specifically controvert any of Defendants' factual assertions and did not cite to the record (for the most part),[34] the Court, out of an abundance of caution, construes Plaintiff's factual assertions in his

---

[30] *See id.* ¶¶ 17–18.

[31] *Id.* ¶ 15.

[32] Doc. 75 ¶ 32 ("Accordingly, Diaz asked Baskin why he had not raised the handcuffs issue earlier while he was in A&D").

[33] *See infra* p. 7.

[34] Some of Plaintiff's factual assertions find support in the Verified Complaint. "'[A] verified complaint may be treated as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out' in Rule 56 . . . ." *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1163 (10th Cir. 2021) (quoting *Abdulhaseeb v.*

response as controverting Defendants' factual assertions and will credit them to the extent that they are supported by the record. The following facts are deemed uncontroverted or construed in the light most favorable to Plaintiff.

Plaintiff is an inmate housed at HCF, and this dispute arises out of Plaintiff's transfer in October 2019 from HCF to another correctional facility in Arizona—Saguaro Correctional Center ("SCC"). Defendant Gaboian was responsible for preparing inmates for their transfer to SCC by outfitting them with restraints. Gaboian placed both belly irons and leg irons on Plaintiff. When putting the irons on inmates, Gaboian followed a routine practice: he would check the tightness of the cuffs by inserting a finger between the handcuffs and the inmate's wrist, which ensured that an inch of space remained between the inmate's wrist and handcuff, and then he would double lock the cuffs to ensure that they would not tighten during transport. Plaintiff, however, contends that Gaboian did not follow this usual procedure with him. Instead, Gaboian placed the wrist restraints "overly tight"[35] and "attempted to place one of his fingers between an imaginary space"[36] separating Plaintiff's wrist from the cuff. In response to Plaintiff's complaints about the cuff's tightness, Gaboian said that "the cuffs were not built for comfort." He declined to adjust Plaintiff's cuffs and gave him a "rude and aggressive" order to board the transport bus.[37]

After they were cuffed, the inmates entered a bus that would take them to the airport; Defendant Diaz drove this bus. The bus was divided by a partition, which separated the bus into

---

*Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010)). Defendants do not dispute that the Verified Complaint satisfies the standards for affidavits; thus, the Court credits Plaintiff's statements therein that are nonconclusory and within his personal knowledge.

[35] Doc. 92 at 2.

[36] Doc. 1 ¶ 21.

[37] Doc. 92 at 6; Doc. 1 ¶ 21.

a front cabin (where Diaz and another officer drove the bus) and a back cabin (where the inmates sat). Although Diaz entered the rear cabin of the bus prior to its departure to prepare seating for the inmates, once the bus departed, KDOC policy forbade Diaz from again entering the rear cabin. So when Plaintiff began to complain that his handcuffs were "too tight,"[38] Diaz did not enter the rear cabin to adjust Plaintiff's handcuffs; instead, Diaz asked him why he did not have his handcuffs adjusted before entering the bus.

The bus eventually stopped on the way to the airport at the El Dorado Correctional Facility ("EDCF"). There, Plaintiff notified an EDCF officer of his handcuff's tightness, and the officer attempted to adjust them.[39] He determined that Plaintiff's handcuffs "were too small even at their loosest setting"[40] but did not conclude that the cuffs had been "adjusted too tightly."[41] Plaintiff received a medical evaluation at EDCF but was told that EDCF could no nothing for him. Plaintiff reboarded the bus and resumed his complaints to Diaz after the bus departed. The bus and inmates eventually arrived at the Salina airport, and from there, flew to SCC.

After arriving at SCC, Plaintiff received an initial intake screening by an RN. Plaintiff noted that he was not experiencing any pain and had no current medical complaints, though he did have bruises and blisters on each of his wrists. Three weeks later, Plaintiff's medical records

---

[38] Doc. 1 ¶ 26.

[39] Plaintiff contends that his restraints "were not checked" during the ECF stop, but he offers no support for that assertion in the record. To the contrary, Plaintiff's Verified Complaint supports the opposite conclusion: the officer "was successful" in "remov[ing] the wrists' restraints, so that he could re-adjust them." Doc. 1 ¶ 31. Because it finds no support in the record, the Court does not credit his assertion that his restraints were not checked. *See A.M. v. Holmes*, 830 F.3d 1123, 1136 (10th Cir. 2016) ("[A]t summary judgment . . . [a] plaintiff's version of the facts must find support in the record." (quoting *Thomson v. Salt Lake County*, 584 F.3d 1304, 1312 (10th Cir. 2009))); *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008) (noting that a "court should not adopt" a version of the facts when "blatantly contradicted by the record" (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007))).

[40] Doc. 75 ¶ 37.

[41] *Id.*

showed that he still had bruises (4x1 cm and 3x1 cm) and blisters; they were clean and well healing. During this second visit, Plaintiff asked the RN to note in his medical records that the "cuffs cut [his] wrists" during the transfer.[42] During his next medical evaluation in October 2020, Plaintiff had no injuries.

**IV.   Analysis**

Plaintiff brings Eighth Amendment claims against Gaboian and Diaz, but he does not specify whether they are official- or individual-capacity claims. Defendants address each type. Because Defendants address both official- and individual-capacity claims, and mindful that Plaintiff proceeds pro se, the Court liberally construes his complaint as stating claims against Gaboian and Diaz both in their official and individual capacities. First, Plaintiff's official-capacity claims must fail because both Defendants are entitled to sovereign immunity. Second, his individual-capacity claims fail because Defendants are entitled to qualified immunity. Defendants are therefore entitled to summary judgment on all claims.

   *A.  Official-Capacity Claims*

Plaintiff's official-capacity claims seek damages, an injunction, and declaratory relief that Gaboian and Diaz violated Plaintiff's Eighth Amendment rights. Sovereign immunity, however, protects Defendants from those claims. "Sovereign immunity is the privilege of the sovereign not to be sued without its consent."[43] The principle of sovereign immunity, which is confirmed by the Eleventh Amendment, provides that states, state agencies, and state officials sued in their

---

[42] Doc. 75 ¶ 71.

[43] *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011).

official capacities are generally immune from suit.[44] When sovereign immunity applies, it deprives the court of subject matter jurisdiction, thereby shielding states from suit.[45] A narrow exception to sovereign immunity, however, is found in *Ex parte Young*, which allows prospective declaratory and injunctive relief against a State for continuing violations of federal law by the State.[46] To determine whether the *Ex parte Young* exception applies, this Court "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."[47]

Pleading a claim against a government offical "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent."[48] Here, KDOC—Defendants' agency—"is an agency or department of the State of Kansas."[49] Therefore, "any decree by the district court ordering a KDOC official to satisfy the judgment would operate against the State's coffers and would 'be paid from public funds in the state treasury.'"[50] And Plaintiff's injunctive and declaratory claims do not fall under the *Ex parte Young* exception because neither identifies an ongoing violation of federal law. Instead, each claim alleges past violations. Plaintiff challenges Gaboian's putting too tight of handcuffs on Plaintiff and Gaboian's and Diaz's failures to loosen the handcuffs. Those instances occurred on October 23, 2019, and Plaintiff makes no allegation that he is still bound by the cuffs. Because Plaintiff

---

[44] *Id.* (citing *Alden v. Maine*, 527 U.S. 706, 713 (1999)); *Richeson v. Weiser*, No. 22-1383, 2023 WL 2003396, at *1 (10th Cir. Feb. 15, 2023).

[45] *Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1080 (10th Cir. 2006).

[46] 209 U.S. 123 (1908); *Chilcoat v. San Juan County*, 41 F.4th 1196, 1213–14 (10th Cir. 2022).

[47] *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 (10th Cir. 2012) (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

[48] *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)).

[49] *Jones v. Courtney*, 466 F. App'x 696, 699 (10th Cir. 2012) (collecting cases).

[50] *Id.* at 700 (quoting *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)).

challenges a past, not ongoing, violation of federal law, the *Ex parte Young* exception is not available here. Because Defendants are entitled to sovereign immunity on Plaintiff's official-capacity claims, the Court lacks subject matter jurisdiction over them, and Defendants are entitled to summary judgment on them.

### B. *Individual-Capacity Claims*

Plaintiff's individual-capacity claims also seek damages, an injunction, and a declaration that Defendants violated his Eighth Amendment rights. Injunctive and declaratory relief are not available for individual-capacity claims under § 1983.[51] So although stated as individual-capacity claims, the injunctive and declaratory claims are treated as claims against the Defendants in their official capacities.[52] And, as discussed above, they are entitled to sovereign immunity for those official-capacity claims.

That leaves only Plaintiff's individual-capacity claim for damages against Gaboian and Diaz. To defend against these claims, Gaboian and Diaz raise qualified immunity. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions"[53] and protects "all but the plainly incompetent or those who knowingly violate the law."[54] Defendants' invocation of qualified immunity changes the summary judgment burdens on the individual capacity claims as follows:

> When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff, who must demonstrate on the facts alleged that (1) the defendant's actions violated his or

---

[51] *Chilcoat v. San Juan County*, 41 F.4th 1196, 1214 (10th Cir. 2022) (citing *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Under § 1983, a plaintiff cannot sue an official in their individual capacity for injunctive or declaratory relief.").

[52] *DeVargas v. Mason & Hanger-Silas Mason Co.*, 844 F.2d 714, 718 (10th Cir. 1988) ("An action for injunctive relief no matter how it is phrased is against a defendant in official capacity only . . . .").

[53] *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

[54] *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986).

        her constitutional or statutory rights, and (2) the right was clearly established at the time of the alleged misconduct. "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing 'that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.'"[55]

### 1. Constitutional Violation

To satisfy the first prong of the qualified-immunity test, Plaintiff must show that Gaboian and Diaz both violated his Eighth Amendment rights by applying his handcuffs too tight and subsequently refusing to adjust them. Depending on the conduct alleged by the prisoner, a potential Eighth Amendment violation is evaluated either as a deliberate-indifference claim or an excessive-force claim.[56] Plaintiff's Complaint is less than clear on what sort of claim he makes, but the Court understands him to challenge Gaboian's and Diaz's deliberate indifference to the tightness of his handcuffs and subsequent refusal to adjust the handcuffs or procure a larger set of handcuffs for him. The Verified Complaint describes the claim as "Eighth Amendment Right" for "Cruel & Unusual Punishment/Unnessary [sic] Wanton Infliction of Pain,"[57] and throughout his summary-judgment response, he charges Gaboian and Diaz with "act[ing] with deliberate indifference . . . by failing to adjust Plaintiff's restraints."[58] Defendants, however, urge the Court to apply the excessive-force framework to the claim against Gaboian because "most cases involving a failure to loosen handcuffs analyze the alleged failure under the

---

[55] *Estate of Beauford v. Mesa County*, 35 F.4th 1248, 1261–62 (10th Cir. 2022) (citation omitted) (quoting *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1239 (10th Cir. 2018)).

[56] *See Redmond v. Crowther*, 882 F.3d 927, 936 (10th Cir. 2018); *see also Grissom v. Bell*, No. 20-3163, 2022 WL 4534620, at *5 (D. Kan. Sept. 28, 2022) (deciding between excessive-force or deliberate-indifference framework).

[57] Doc. 1 at 3-B.

[58] Doc. 92 at 2; *see also id.* at 4 ("Defendants Gaboian and Diaz acted with . . . deliberate indifference to Baskin's safety."); *id.* at 5 ("Defendants Gaboian and Diaz had . . . deliberate indifference when applying the wrists [sic] restraints and refused to adjust . . . ."). *But see id.* at 8 ("Gaboian . . . is the person who applied the excessive force against [Plaintiff] . . . .").

framework of excessive force."[59]  Although Defendants are correct that many of their cited cases apply the excessive-force framework, that is because most of the cases they cite arise in the Fourth Amendment context, in which the deliberate indifference standard is unavailable.[60]  For Eighth Amendment claims, the more stringent excessive-force standard is used when prison officials "employ force 'to resolve a disturbance . . . that indisputably poses significant risks to the safety of inmates and prison staff.'"[61]  Because neither of Plaintiff's claims allege that Gaboian or Diaz made or carried out "decisions involving the use of force to restore order in the face a prison disturbance,"[62] and because the Court construes Plaintiff's filings to challenge Defendants' deliberate indifference to the tight handcuffs, the Court will analyze the claims under the deliberate-indifference standard.[63]

"'Deliberate indifference' involves both an objective and a subjective component."[64]  Because Plaintiff's claim fails under the objective component, the Court does not address the subjective component.  "The objective component is met if the deprivation is 'sufficiently serious.'"[65]  Typically, a medical need is sufficiently serious if it "has been diagnosed by a physician as mandating treatment" or if it is "so obvious that even a lay person would easily

---

[59] Doc. 75 at 18.

[60] *See, e.g.*, *Watkins v. Wunderlich*, No. 22-1358, 2023 WL 4145904 (10th Cir. June 23, 2023); *Koch v. City of Del City*, 660 F.3d 1228 (10th Cir. 2021); *Scott v. City of Albuquerque*, 711 F. App'x 871 (10th Cir. 2017); *Fisher v. City of Las Cruces*, 584 F.3d 888 (10th Cir. 2009).

[61] *Redmond*, 882 F.3d at 936 (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)); *Whitley*, 475 U.S. at 320 (recognizing need to adopt excessive force standard because deliberate indifference standard does not "adequately capture" concerns present in prison disturbances).  *But see DeSpain v. Uphoff*, 264 F.3d 965, 977–78 (10th Cir. 2001) (applying excessive-force framework for using pepper spray even in absence of disturbance).

[62] *Redmond*, 882 F.3d at 936 (quoting *Whitley*, 475 U.S. at 320).

[63] Even if the claim against Gaboian is better analyzed as an excessive-force claim, Gaboian would still be entitled to qualified immunity on the second prong, as discussed below, because Plaintiff has not carried his burden to show that Gaboian and Diaz violated clearly established law.

[64] *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).

[65] *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

recognize the necessity for a doctor's attention."[66]  "But a plaintiff can also satisfy the objective component based on a 'delay in medical care . . . if the delay resulted in substantial harm.'"[67]  "[L]ifelong handicap, permanent loss, or considerable pain" can constitute substantial harm,[68] but discomfort and minor pain from temporary adverse conditions are insufficient.[69]  Rather, the harm must "den[y] the inmate 'the minimal civilized measure of life's necessities.'"[70]

Plaintiff has failed to show that tightness from the handcuffs was sufficiently serious to satisfy the objective component of an Eighth Amendment claim.  Plaintiff here demonstrates discomfort from the cuffs' tightness—which subsequently caused bruising and blisters—but he has not produced a medical diagnosis mandating treatment.  And he has not demonstrated that the tightness posed a threat so obvious that a lay person would recognize the need for a doctor's attention.  Such a threat may be "severe chest pain"[71]; being "pale, sweating, and . . . vomiting"[72]; or contusions and cuts to the head and neck.[73]  But here, Plaintiff alleged no such symptom that would be so obvious to Gaboian and Diaz that he required medical attention.  And although Plaintiff said that the cuffs were "too tight" (in the case of Gaboian) or "cutting into [his] arms and wrists" (in the case of Diaz), those harms falls far below the sort of substantial

---

[66] *Id.* (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)).

[67] *Paugh v. Uintah County*, 47 F.4th 1139, 1155 (10th Cir. 2022) (quoting *Estate of Beauford v. Mesa County*, 35 F.4th 1248, 1262 (10th Cir. 2022)).

[68] *Requena v. Roberts*, 893 F.3d 1195, 1216 (10th Cir. 2018) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

[69] *Dittmeyer v. Whetsel*, 91 F. App'x 111, 117 (10th Cir. 2004).

[70] *Duran v. Donaldson*, 663 F.App'x 684, 688 (10th Cir. 2016) (quoting *Rhodes v. Chapman*, 542 U.S. 337, 347 (1981)).

[71] *Mata v. Saiz*, 427 F.3d 745, 754 (10th Cir. 2005).

[72] *Sealock v. Colorado*, 218 F.3d 1205, 1208 (10th Cir. 2000).

[73] *Higgins v. Bernalillo Cnty. Bd. of Comm'rs*, No. 24-00167, 2024 WL 4231491, at *3 (D.N.M. Sept. 19, 2024)

harm—"lifelong handicap, permanent loss, or considerable pain"[74]—that often satisfies the objective prong. Because Plaintiff has not shown that the tightness of his handcuffs—associated bruises and blisters—constitutes a sufficiently serious injury, he has failed to satisfy the objective prong of his Eighth Amendment claim. He therefore has not carried his burden to show that Defendants violated his constitutional right, and the Defendants are entitled to qualified immunity on that ground.

### 2. Clearly Established

Even if Plaintiff could satisfy the first prong of the qualified immunity test by showing that each Defendant was deliberately indifferent to his serious medical needs, he does not carry his burden on the second prong of the test. It is Plaintiff's responsibility to come forward with specific Supreme Court or Tenth Circuit case law that shows it was clearly established that Defendants' actions violated the Constitution.[75] Precedent is considered "on point if it involves materially similar conduct or applies with obvious clarity to the conduct at issue."[76] And although an exact factual analogue is not necessary, the clearly established law must be "'particularized' to the facts of the case."[77] To meet his burden on this prong, Plaintiff has offered only two cases, neither of which demonstrates that Gaboian and Diaz violated clearly established law.

First, Plaintiff cites *Cortez v. McCauley*, which addressed a Fourth Amendment excessive-force claim and opined that "unduly tight handcuffing can constitute excessive

---

[74] *Estate of Beauford v. Mesa County*, 35 F.4th 1248, 1262 (10th Cir. 2022).

[75] *See Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017).

[76] *Id.* (internal quotations and emphasis omitted).

[77] *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

15

force."[78]  But that case is distinguishable from Plaintiff's factual scenario here because it addressed the arrest and investigative detention of two free citizens, not the handcuffing of an inmate for transfer to another correctional facility.[79]  Moreover, the case is inapposite because it does not apply an Eighth Amendment standard—it applies Fourth Amendment reasonableness under *Graham v. Connor*.[80]  Second, Plaintiff cites the Third Circuit case *Young v. Martin*.[81]  But because that case is from the Third Circuit, it cannot demonstrate clearly established law in this Circuit.  Having cited only an out-of-circuit case and an inapposite case, Plaintiff has failed to meet his burden to show that Defendants violated clearly established law when they failed to adjust his handcuffs.  Therefore, Defendants are entitled to qualified immunity for the additional reason that Plaintiff fails to establish the second prong of qualified immunity.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion for Summary Judgment (Doc. 75) is **granted**.

**IT IS SO ORDERED.**

Dated: December 3, 2024

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[78] 478 F.3d 1108 (10th Cir. 2007).

[79] *Id.* at 1129–30 (considering "whether the failure to adjust [plaintiff's] handcuffs during an arrest constitutes excessive force" and concluding that defendant's use of force "violated [plaintiff's] Fourth and Fourteenth Amendment right to be free from the use of excessive force in the context of an investigative detention")

[80] 490 U.S. 386 (1989).

[81] 801 F.3d 172 (3d Cir. 2015).